**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LARRY SANFORD WALKER,     :     Civil No. 3:21-cv-1881
                       :
       Plaintiff      :     (Judge Mariani)
                       :
   v.              :
                       :
UNITED STATES OF AMERICA, *et al.*,  :
                       :
     Defendants     :

## MEMORANDUM

Plaintiff Larry Sanford Walker ("Walker"), an inmate who was housed at all relevant times at the United States Penitentiary, Canaan, Pennsylvania ("USP-Canaan"), is pursuing claims in this action pursuant to *Bivens*[1] and the Federal Tort Claims Act. (Doc. 1). Named as Defendants are the United States of America, Warden E. Bradley, and two unknown prison officials. Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 16). For the reasons set forth below, the Court will grant the motion. The Court will also dismiss the action against the two unknown prison officials pursuant to Federal Rule of Civil Procedure 4(m).

## I.   Allegations of the Complaint

Walker sets forth an FTCA negligence against the United States, and an Eighth Amendment constitutional claim under *Bivens* against Warden Bradley and two unknown

_____

[1]   *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

prison officials for allegedly failing to follow proper COVID-19 safety protocols. (Doc. 1, pp. 2-3, 11).

Walker alleges that USP-Canaan staff placed his housing unit, Unit F2, under strict quarantine from November 23, 2020 through February 2021, in order to mitigate the risk of spreading COVID-19. (*Id.* at p. 5). He alleges that inmates could not leave or enter Unit F2. (*Id.* at pp. 5-6). During this quarantine, prison staff moved through the housing unit and administered COVID-19 tests to all inmates in Unit F2. (*Id.*). On December 18, 2020, Walker's test was negative. (*Id.* at p. 6). Only prisoners with negative tests remained in the housing unit. (*Id.*). On January 9, 2021, Walker tested positive for COVID-19. (*Id.* at p. 5). As a result of contracting COVID-19, Walker alleges that he suffered from migraine headaches, fatigue, insomnia, shortness of breath, uncertain smell and taste, post-traumatic stress disorder, anxiety, difficulty concentrating, impaired memory, depression, and social withdrawal. (*Id.* at pp. 6, 9-10).

Walker contends that Defendants caused his exposure to COVID-19 through negligence and deliberate indifference. He asserts that the heating, ventilation, and air conditioning ("HVAC") system in Unit F2 was ineffective, and that Defendants failed to upgrade or replace the system. (*Id.* at pp. 8, 11). He alleges that Defendants hired incompetent prison officials who did not use, or incorrectly used, personal protective equipment ("PPE") and that Defendants failed to train, educate, and enforce rules on proper use of PPE. (*Id.* at p. 11). He alleges that Defendants failed to implement and enforce

aggressive policies for COVID-19 testing, screening, and contact tracing.  (*Id.*).  Walker

asserts that the housing at USP-Canaan did not allow for effective social distancing.  (*Id.* at

p. 12).  Finally, he alleges that the prison did not provide N-95 face masks, gloves, or hand

sanitizer, and instead, inmates received a new cloth face mask once a month.  (*Id.*; Doc. 1-

2, p. 2).

## II.  <u>Legal Standard</u>

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

III.   **Discussion**

A.   **Negligence Claim under the FTCA**

By virtue of the FTCA, Congress has consented to liability for money damages suits against the United States for injury or loss of property "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  The FTCA allows recovery for damages for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee.  28 U.S.C. § 2674; *United States v. Muniz*, 374 U.S. 150 (1963).

In considering an FTCA claim, the law of the place where an act or omission occurs is to be applied.  28 U.S.C. § 1346(b).  Because USP-Canaan is in Pennsylvania, Pennsylvania law applies.  Under Pennsylvania law, a plaintiff must prove the following elements to establish a prima facie claim for negligence: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2006).  In cases that involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence, meaning that the United States must "exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him."  *See* 18 U.S.C. § 4042; *Turner v. Miller*, 679 F.Supp. 441, 443 (M.D.

5

Pa. 1987). The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. *Hossic v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. *Baum v. United States*, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[2]

The United States argues that Walker cannot make the requisite showing to establish a prima facie negligence claim. (Doc. 21, pp. 9-12). Specifically, the United States argues that Walker failed to adequately allege a causal connection between his alleged injuries and the employees' alleged breach of duty. (*Id.*). The Court concludes that Walker failed to carry his burden of proof on two of the four elements of a negligence claim under Pennsylvania law.

With respect to the first and second prongs, prison officials owe federal inmates a duty of care to protect them from unreasonable risks. 18 U.S.C. § 4042(a)(2), (3) (requiring the BOP to provide for the "protection" and "safekeeping" of inmates in its care). Assuming *arguendo* that the United States breached that duty, Defendants argue that Walker failed to establish a causal link.

---

[2]    Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

As to the third and fourth elements, Walker fails to show a causal connection between the conduct of prison staff and his COVID-19 infection. As a precaution, Walker was in quarantine from November 2020 to February 2021, with limited movement inside the housing unit and inmates were not permitted to enter or leave the housing unit. (Doc. 1, p. 5). Prison officials tested inmates for COVID-19 and only inmates who tested negative for the virus were allowed to stay on the housing unit. (*Id.*). Walker alleges that "[s]ometime in December 2020 and January 2021" he contracted COVID-19, and "[u]pon information and belief", unidentified prison officials transmitted COVID-19 to the housing block, causing Walker to contract the virus. (*Id.* at pp. 5-6). Walker merely surmises that unknown prison staff may have transmitted the virus. He indicates that he contracted COVID-19 at some point over a one-month period. Without knowing when he was exposed to the virus, Walker is unable to identify the individuals who exposed him to COVID-19 and fails to precisely identify the actions or inactions that resulted in his exposure to the virus. The BOP is required only to protect a prisoner from danger that is known or can reasonably be apprehended, not to ensure the prisoner's safety. *Hossic*, 682 F.Supp. at 25. USP-Canaan is a high security facility. *See* https://www.bop.gov/coronavirus, last viewed May 10, 2022. At this time, there are no inmates that are infected with COVID-19. *Id.* 374 inmates and 161 staff members have recovered from COVID-19. *Id.* It is clear from the complaint that USP-Canaan took COVID-19 seriously and took reasonable steps to address the COVID-19 pandemic within the constraints of appropriate institutional security concerns. In sum, the

7

Court finds that the conduct of BOP officials did not proximately cause Walker's infection of

COVID-19. Based on the foregoing, the Court will dismiss Walker's FTCA claim.

> **B.    A *Bivens* Remedy is not Available for Walker's Conditions of Confinement Claim**

Defendants next move to dismiss the conditions of confinement claim on the basis

that there is no *Bivens* remedy available for this Eighth Amendment claim. (Doc. 21, pp. 13-

21). In so moving, they rely on the Supreme Court's pronouncement in *Ziglar v. Abbasi*,

582 U.S. ____, 137 S. Ct. 1843 (2017), that "expanding the *Bivens* remedy is now a

'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).

By way of background, in *Bivens*, the Supreme Court concluded that, even absent

statutory authorization, it would enforce a damages remedy allowing individuals to be

compensated after experiencing Fourth Amendment violations of the prohibition against

unreasonable searches and seizures. *Bivens*, 403 U.S. at 397. The Court extended *Bivens*

to include a Fifth Amendment Due Process damages remedy to an administrative assistant

claiming that a Congressman discriminated against her based on gender. *Davis v.

Passman*, 442 U.S. 228, 249-49 (1979). The Court extended *Bivens* yet again in 1980,

concluding that the Eighth Amendment's prohibition on cruel and unusual punishment

provided a prisoner a cause of action for damages against prison officials who failed to treat

his asthma. *Carlson v. Green*, 446 U.S. 14, 19 (1980). "These three cases—*Bivens*, *Davis*,

and *Carlson*—represent the only instances in which the Court has approved of an implied

damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

In *Ziglar*, the Supreme Court set forth a two-part test to determine whether a *Bivens* claim may proceed. *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). Initially, courts must determine whether the case presents a new *Bivens* context; "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court, then the context is new." *Id.* at 1859. "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1859-60. If the case presents a new context, a court must consider whether any alternative remedies exist. *Id.* at 1859-60. Even absent alternative remedies, a court must also consider whether special factors counsel against extending the *Bivens* remedy. *Id.*

In the matter *sub judice*, Walker alleges that Defendants exhibited deliberate indifference towards his conditions of confinement, causing the spread of COVID-19. There is no question that Walker's Eighth Amendment conditions of confinement claim presents a new context because it is "different in a meaningful way from previous *Bivens* cases

decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. at 1859.[3]  The Supreme Court has

never extended *Bivens* to claims against federal prison officials regarding conditions of

confinement.  Of the three cases in which the Supreme Court has recognized *Bivens*

claims—*Ziglar*, *Davis*, and *Carlson*—, *Carlson* is the only case that involves an Eighth

Amendment claim.  However, Walker's claims are markedly different from the Eighth

Amendment inadequate medical care claim in *Carlson*.  *See Mammana v. Barben*, 856 F.

App'x 411 (3d Cir. 2021) (nonprecedential) (rejecting inmate's argument that *Carlson* gives

footing to an Eighth Amendment conditions-of-confinement claim against federal officials);

*Bistrian v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018) (holding that although *Davis* and *Carlson*

extended *Bivens* to the Fifth and Eighth Amendments, respectively, they only addressed

gender discrimination and inadequate medical care claims, and "even if there are 'significant

parallels to one of the Court's previous *Bivens* cases,' 'a modest extension is still an

extension.'" (quoting *Ziglar*, 137 S. Ct. at 1864)); *see also Hernandez v. Mesa*, 589 U.S.

___, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on

the same constitutional provision as a claim in a case in which a damages remedy was

previously recognized."); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)

(The Supreme Court has "consistently refused to extend *Bivens* liability to any new context

---

[3]    Walker's claims "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court.  *Ziglar*, 137 S. Ct. at 1860.

or new category of defendants" beyond alleged violations by federal actors of the Fourth

Amendment, Fifth Amendment Due Process Clause, or Eighth Amendment Cruel and

Unusual Punishments Clause).

Next, the Court considers whether any alternative remedies exist and whether

special factors counsel against extending the *Bivens* remedy.  *Ziglar*, 137 S. Ct. at 1859-60.

Defendants argue that the BOP's Administrative Remedy Program provides an alternative

process.  (Doc. 21, p. 18).  The Supreme Court has found that "administrative review

mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the

constitutional violation."  *Malesko*, 534 U.S. at 68.  The Court concludes that the BOP's

Administrative Remedy Program provides an alternative process.  Significantly, the fact that

Walker may have been unsuccessful in utilizing the administrative process does not mean

that such a process does not exist as an alternative remedy.  *Malesko*, 534 U.S. at 69

(noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of

separation of powers foreclosed judicial imposition of a new substantive liability").  "[W]hen

alternative methods of relief are available, a *Bivens* remedy usually is not."  *Ziglar*, 137 S.

Ct. at 1863.

Defendants also rely on special factors including the separation-of-powers concerns

raised by Congress' repeated legislative action on safeguarding the rights of federal

prisoners without providing a damages remedy against federal actors.  (Doc. 21, pp. 19-21).

They also cite to prison administration and the burdens and costs associated with pursuing

such lawsuits as special factors precluding the extension of *Bivens*.  (*Id.*).

Based on the foregoing, the Court concludes, as many courts have concluded,[4] that

extending *Bivens* to Walker's Eighth Amendment conditions of confinement claim would be

contrary to law.  Accordingly, Defendants' motion to dismiss this claim will be granted.

### C.    Lack of Personal Involvement of Defendant Bradley

Defendants seek to dismiss the claims against Defendant Bradley based on a lack of

personal involvement.  (Doc. 21, pp. 21-23).

Individual liability will be imposed under Section 1983 only if the state actor played

an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353

(3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability

"cannot be predicated solely on the operation of respondeat superior."  *Id.*  In other words,

defendants in Section 1983 civil rights actions "must have personal involvement in the

alleged wrongs . . . shown through allegations of personal direction or of actual knowledge

and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d

---

[4]    *See, e.g.*, *Mammana v. Barben*, No. 20-2364, 2021 WL 2026847, at *4 (3d Cir. May 21, 2021) (footnote omitted) (plaintiff alleging Eighth Amendment violation for confinement for four days "in a chilled room with constant lighting, no bedding, and only paper-like clothing" did not state a *Bivens* claim, with the Third Circuit noting plaintiff "asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court"); *Hill v. Lappin*, No. 3:11-cv-1609, 2021 WL 2222725, *3 (M.D. Pa. June 2, 2021) (noting that "courts began to appreciate *Abbasi's* watershed scope, [and] the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement . . .claims.").

at 1207-08.  A plaintiff must establish the particulars of conduct, time, place, and the person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of, or personal involvement in, the deprivation of his or her rights, individual liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.  A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  *See Rode*, 845 F.2d at 1207.

Walker asserts that he contracted COVID-19 due to lax mitigation practices at USP-Canaan.  However, he does not allege facts to support an inference that Defendant Bradley was responsible for these practices or the conditions that led to his infection.  He alleges that the prison failed to follow appropriate COVID-19 safety protocols, but he does not allege facts concerning the involvement, if any, of Defendant Bradley in these practices.  Instead, he states that unknown prison officials exposed him to COVID-19.  Thus, the Court can only construe Walker's pleadings as asserting claims against Warden Bradley under a theory of *respondeat superior*.

With respect to Defendant Bradley's supervisory role as Warden, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in

13

violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). The complaint fails to allege that Defendant Bradley established and maintained a policy, practice or custom which directly caused the constitutional harm, or that he participated in violating Walker's rights, directed others to violate them, or acquiesced in any unconstitutional conduct by their subordinates.

Based on the above, Defendants' motion to dismiss the claims against Warden Bradley will be granted based on a lack of personal involvement.

### D.     Eighth Amendment Claim

Assuming *arguendo* that Walker may proceed on his Eighth Amendment claim, Defendants seek dismissal of the complaint on the basis that Walker has not pled a plausible Eighth Amendment claim against them.

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated in party on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore,

conditions of imprisonment violate the Eighth Amendment only if they, "alone or in

combination . . . deprive inmates of the minimal civilized measures of life's necessities."

*See id.* at 347.  Such necessities include "adequate food, clothing, shelter, and medical

care."  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, "extreme deprivations are

required to make out a conditions-of-confinement claim."  *See Hudson v. McMillian*, 503

U.S. 1, 9 (1992).  However, "[s]ome conditions of confinement may establish an Eighth

Amendment violation 'in combination' when each would not do so alone, but only when they

have a mutually enforcing effect that produces the deprivation of a single, identifiable

human need such as food, warmth, or exercise."  *Mammana v. Fed. Bureau of Prisons*, 934

F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and

*Rhodes*, 452 U.S. at 347).

 The COVID-19 pandemic constitutes a substantial risk of harm to inmates.

However, Walker has failed to allege facts suggesting that Defendants demonstrated

deliberate indifference to the risk posed by COVID-19.  Walker has failed to establish that

the conditions at USP-Canaan amount to unconstitutional punishment.  He alleges that

prison officials failed to properly wear PPE, failed to upgrade an HVAC system, failed to

offer N-95 masks, gloves, and hand sanitizer for purchase, the COVID-19 policies were not

substantial in screening and contact tracing, and prison cells did not accommodate social

distancing.  (Doc. 1, pp. 11-12).  As previously recognized, "the prison setting raises unique

concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons

are confined spaces unsuited for social distancing." *Rodriguez-Francisco v. White*, No.

1:20-CV-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020).  However, the "inability to

practice social distancing is not, in and of itself, sufficiently serious to implicate a violation of

the Eighth Amendment." *Id.*

    While the Court understands Walker's legitimate concerns regarding the COVID-19

pandemic, it agrees with the numerous courts throughout the nation that have concluded

that similar allegations do not support a plausible inference that officials have demonstrated

deliberate indifference to inmates' Eighth Amendment rights.  *See, e.g., Swain v. Junior*,

958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's

grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not

demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19

because the correctional facility had "implemented many measures to curb the spread of the

virus"); *Bevins v. Kauffman*, No. 1:20-cv-02012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1,

2021); *Wilkins v. Wolf*, No. 1:20-cv-2450, 2021 WL 1578250, at *6-7 (M.D. Pa. Apr. 22,

2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment claim regarding

an alleged inadequate response to the COVID-19 pandemic); *Wylie v. Bonner*, No. 2:20-cv-

2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-

plaintiff had failed to state an Eighth Amendment conditions of confinement claim because

he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr*

*v. LeBlanc*, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that

the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because

measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp.

3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint

failed to set forth a plausible Eighth Amendment claim when prison officials had developed

and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526,

2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020) (concluding that inmate-plaintiff failed

to state an Eighth Amendment claim where defendants had taken "significant measures . . .

to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the

mere possibility that he will become infected does not rise to the level of an Eighth

Amendment violation").  Indeed, "the Eighth Amendment does not require perfection on the

part of prison officials."  *See Wylie*, 2021 WL 261280, at *6.

　　　The Court is sympathetic to the fact that Walker contracted COVID-19.  Walker's

complaint, however, is devoid of allegations that he experienced any serious symptoms

upon contracting COVID-19.  From the complaint, as pled, the Court "cannot conclude that,

when faced with a perfect storm of a contagious virus and the space constraints inherent in

a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'"  *See*

*Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).  Therefore, the Court will grant

Defendants' motion to dismiss for failure to state a plausible Eighth Amendment claim.

17

## IV.  Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The federal rules

allow for liberal amendments in light of the "principle that the purpose of pleading is to

facilitate a proper decision on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962)

(citations and internal quotations omitted).  Walker's claims are factually and legally flawed;

thus, the Court concludes that granting leave to amend would be futile.

## V.  *Federal* Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The unknown prison officials were named in the complaint that was

filed on November 4, 2021 and, to date, have not been identified or served in this case.  The

Court must engage in a two-step process in determining whether to dismiss the unidentified, non-served Defendants or grant Walker additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Walker failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Walker that the action against the unknown prison officials was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m). (Doc. 26). Walker failed to respond to the Rule 4 show cause order, and his *pro se* status is not good cause to excuse his failure to timely identify or serve the unknown Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the

lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Walker failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m).  It is Walker's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (*See* Doc. 11 ¶ 7) (advising Walker that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Walker's lack of good faith effort to identify or serve the unknown prison officials, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-identified, non-served Defendants will be dismissed from this action.

## VI.    <u>Conclusion</u>

For the reasons set forth above, the Court will grant Defendants' motion (Doc. 16) to dismiss.  The Court will also dismiss the action against the two unknown prison officials pursuant to Federal Rule of Civil Procedure 4(m).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May ___10___, 2022